### In re Michael H. CRESTWELL, Debtor.

### Bankruptcy No. 82–00470 *.

United States Bankruptcy Court, District of Columbia.

May 12, 1983.

* In re Alvin G. Francies, 82–00475; In re Oscar S. Mayers Sr., 82–00477; In re Brenda Smoot, 82–00482; In re Delores B. Stevens, 82–00537; In re Marian C. Brown, 82–00557; In re Vanessa R. Clark, 82–00578; In re Dock Jeter, Jr., 82–00628; In re Van-Eff Investments Inc., 82–00636; In re Malcolm J. Taylor, 82–00637; In re Blesed M. Ahjaghotu, 82–00658; In re Charles B. Papafio, 82–00670; In re Dorah C. Ahaghota, 82–00671; In re Virginia Turner, 82–00692; In re Ethel Frances Ottey, 82–00703; In re Arthur N. Thorpe, 83–00010; In re Robert Jenkins, 83–00022; In re Bruce Cockrell, 83–00023; In re Gene A. Spruill, 83–00032; In re Evelyn R. Horne, 83–00033; In re Frank L. Peterson, 83–00034.

Roderick C. Willis, pro se.

Gerald C. Baker, Diemer & Baker, Lanham, Md., for Roderick C. Willis.

## MEMORANDUM OPINION

### (Order to Show Cause—Attorney's Fees)

ROGER M. WHELAN, Bankruptcy Judge.

This matter came before the United States Bankruptcy Court for hearing on April 11, 1983, based on an Order to Show Cause directed to the named attorney, Roderick C. Willis, Esq., for each of the above-named debtors, pursuant to Section 329 of the Bankruptcy Code and Bankruptcy Rule 220,[1] by Orders of this Court dated February 17, 1983. The attorney of record, Roderick C. Willis, Esq., named as respondent in the aforesaid Show Cause Orders, is the attorney of record in all of the above-captioned bankruptcy cases and was directed to appear before this Court to explain the quality of his services rendered in each of these cited cases. Moreover, the facts of record with respect to the pleadings filed in each of the above-captioned cases have raised serious issues not only as to the quality of representation but more importantly as to the issue of delay within the meaning of Bankruptcy Rule 911.[2]

The attorney of record, together with his attorney, Gerald C. Baker, Esq., for purposes of this hearing, appeared and testified on the above issues in each of the above-captioned bankruptcy cases. As a result of that hearing, the Court concludes that the attorney has failed to represent his clients properly in each of the above-captioned bankruptcy cases. The Court further finds that the pleadings in most of the cases filed were proffered in clear and direct violation of Bankruptcy Rule 911.

A review of the evidence of record, including the testimony of attorney Roderick C. Willis, Esq., adduced at the hearing on this Court's Show Cause Order reflects that in each one of the captioned cases, the pleadings filed were sloppy, incoherent, incomplete and misleading on their face. Moreover, a review of each of the captioned cases reveals that the pleadings are deficient and present an inadequate legal basis for confirmation of a Plan under Chapter 13 of the Bankruptcy Code.[3] In almost all of the cases, the attorney failed to comply with the time requirements of the Bankruptcy Rules in that the Chapter 13 Statement and/or Plan were not timely filed. As a result of the quality of services rendered, and for the reasons stated herein, many of the Chapter 13 cases were dismissed. In connection with representation of any clients' interests, "... the attorney has a duty to make an investigation and ascertain that it has at least some merit,

---

1. 11 U.S.C. § 329(a):

   "(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of and in connection with the case by such attorney, and the source of such compensation."
   Bankruptcy Rule 220(a)
   "*Payment or Transfer to Attorney in Contemplation of Bankruptcy.* On motion by any party in interest or on the court's own initiative, the court may examine any payment of money or any transfer of property by the bankrupt, made directly or indirectly and in contemplation of the filing of a petition by or

against him, to an attorney for services rendered or to be rendered."

2. Bankruptcy Rule 911 is essentially an adaptation of FRCP 11 which provides in relevant part:

   "The signature of an attorney on any pleading, motion, or application served or filed in a bankruptcy case constitutes a certificate by him that he has read the paper; that to the best of his knowledge, information, and belief, there is good ground to support it; and that it is not interposed for delay or other improper purpose...."

3. With the exception of *Van-Eff Investments, Inc.,* Bankruptcy Case No. 82–00636, filed under Chapter 11 of the Bankruptcy Code, all of the petitions filed pursuant to Section 301 of the Code were filed for relief under Chapter 13 of the Bankruptcy Code.

...".[4] This basic obligation surely connotes that the attorney has at least met with the debtor, discussed in some detail the financial background of the debtor and in turn reviewed certain basic records such as tax returns, bills or other evidence of indebtedness, and related financial information and documentation. The attorney assuredly has persuaded himself that the basic requirement of eligibility for relief under a particular chapter of the Bankruptcy Code has been met and has further satisfied himself that the debtor would derive the intended benefit envisioned by the bankruptcy laws. After a review of each of one the filed cases herein, as well as assessing the credibility of the witness, Roderick Willis, Esq., it becomes clear to the Court that in almost all of the cases herein the attorney prepared these petitions without any meaningful investigation as envisioned by the Rules. This lack of investigation on counsel's part is particularly clear with reference to the case of Michael Crestwell, wherein the attorney of record recounted the following:

"A. I did. Mr. Crestwell called me at my residence at approximately 11:30 at night, the night prior to the date of the foreclosure, and represented to me that his house was in foreclosure for delinquencies that related to his mortgage payments and possibly delinquencies as they related to his condominium fees.

And I told him that I did not know the total situation, but that I would meet him at the courthouse and help prepare a Chapter XIII to which a statement and a plan would, in fact, be due.

. . . . .

Q. And did you rely upon the information provided to you by Mr. Crestwell?

A. Solely upon Mr. Crestwell's representation. As a matter of fact, Mr. Crestwell met me in the courthouse, and they were actually done in the courthouse.

I may state for the record that my address changed several times during the last six or seven months, 'cause I lost a sublease, I was forced to practice in a sublease that I had in Crystal City.

I lost, have been forced to practice out of my home and because of marital problems, I was forced to change my address again because of a separation.

But my clients were given notification of how to reach me, and I tried to reach Mr. Crestwell several times. As a matter of fact, I even knocked on his door. And the next time I saw Mr. Crestwell he was physically in the courtroom, saying that he had not been able to get in touch with me. But I never received anything." [5]

In addition to the attorney's failure to investigate certain basic matters which should precede the filing of a petition in bankruptcy, it is clear from the pleadings of record that the attorney filed only the basic petition in order to secure the protection of the automatic stay. *See* 11 U.S.C. § 362(a). The pleadings in question, for the most part, were prepared in handwriting, were prepared at the courthouse based upon information relayed to the attorney by his client, and as a result of which were incomplete and misleading on their face. In almost all the Chapter 13 cases filed, the budgets submitted as part of the Chapter 13 Statement were incomplete, inconsistent and did not provide full, detailed information as required by the Rules. The Plans, when filed, were also incomplete in that they did not supply required information as to payment provisions for secured and unsecured creditors. A few further examples demonstrate the attorney's failure to represent his clients' interests fully and properly in each of these cases; *e.g.,* in the matter of *Delores B. Stevens,* Case No. 82–00537, the attorney accepted a post-dated check from his client for attorney's fees.[6] This

---

**4.** *Rhinehart v. Stauffer,* 638 F.2d 1169 (9th Cir. 1980).

**5.** *In re Michael H. Crestwell, et al.,* Case No. 82–00470, Transcript of Proceedings for April 11, 1983. Tr. at 20–21; 21–22.

**6.** Tr. at 42.

clearly was improper in view of the fact that fees would then be paid during the post-petition period without the authority of the Bankruptcy Court. In the matter of *Dock Jeter, Jr.,* Case No. 82–00628, the attorney took no follow-up action to notify a garnishee of the pending bankruptcy.[7] In the matter of *Van-Eff Investment, Inc.,* Case No. 82–00636, which was the only Chapter 11 filed by the attorney of record herein, the pleadings filed were incomplete on their face in that the attorney failed to comply with the local rules by supplying a list of the ten largest unsecured creditors, nor did the attorney ever file an Application to have himself retained as counsel for the debtor in possession as required by the Code. It was also clear from the testimony of the debtor's attorney that the Chapter 11 was filed without any significant investigation on the part of counsel into either the affairs of the corporation or a review of basic books and records. The attorney was content to rely solely upon the representation made by apparent officers and directors and the attorney himself admitted that:

"... However, these individuals had no information whatsoever on the status of the corporation, and I made repeated requests from Mrs. Formant to give me information concerning consistency because I knew that she had recently filed a personal bankruptcy where buildings were listed in her name, and I believe the record will reflect that." [8]

Although the attorney goes on to state that when certain information was not forthgoing he requested withdrawal from the case, he nonetheless accepted the responsibility of filing a petition under Chapter 11 of the Bankruptcy Code without any meaningful investigation on his part as envisioned by

the Rules. In the matters of *Blessed M. Ahaghotu,* Case No. 82–00658 and *Dorah C. Ahaghota,* Case No. 82–00671, the attorney of record did not even have all of the facts present with respect to real estate owned by the debtors.[9] An in-depth conference with his clients and a basic investigation of certain records, such as tax returns, would have disclosed the relevant information and avoided much of the delay caused in these cases. In the matter of *Ethel Frances Ottey,* Case No. 82–00703, the attorney of record failed to disclose the existence of a substantial tax lien due and owing to the D.C. Government,[10] which in turn was a prime motivating factor for the filing of relief under the Bankruptcy Code.

Moreover, a review of the cases filed herein clearly demonstrates that the attorney of record was filing these petitions contrary to the intent and spirit of Bankruptcy Rule 911. It was encumbent upon the attorney of record to satisfy himself that these cases were commenced in good faith, and further, that his "signature ...

on a pleading constitutes a certificate by him that he has read the paper; that to the best of his knowledge, information, and belief, there is good ground to support it; and that it is not interposed for delay or other improper purpose."

Bankruptcy Rule 911(a).

It is clear that counsel consistently was content to rely upon the representations of his clients without any review of underlying facts necessary to support those allegations. Moreover, as in the case of *Michael Crestwell,* the attorney merely went to the courthouse and caused a petition to be filed on behalf of his client without any significant review of the underlying facts.[11] As noted

---

**7.** Tr. at 49.

**8.** Tr. at 51.

**9.** Tr. at 59–61.

**10.** Tr. at 72.

**11.** In each of the cases itemized and set forth herein, a review of the evidence of record as well as the testimony of the attorney of record, Roderick C. Willis, indicates that these peti-

tions were filed primarily for purposes of securing improper delay. The evidence of record clearly reflects that the motivating factor behind the filing of these petitions was to secure the benefit of the automatic stay in order that the client could either pursue or continue efforts at the refinancing of the subject real estate. In many of the noted cases, the only obligation was that to a secured creditor where the only relief envisioned by the Code, pursuant to 11 U.S.C. § 1322(b)(5), is the liquidation

in the footnote herein, the sole and only purpose for the filing of the Chapter 13 petitions was to secure a delay from foreclosure and to "buy time" in order to complete the contemplated refinancing of the property at issue. This Court has already ruled in *In re Whitten,* 11 B.R. 333 (Bankr. D.D.C.1981) that such filing is an abuse of the Bankruptcy Court process and that an attorney who files such a petition in bankruptcy "violates the spirit and proscriptions of Bankruptcy Rule 911." *Id.* at 334. This abuse is particularly clear with reference to the Chapter 11 case filed in *Van-Eff Investments* on November 15, 1982. This case was subsequently dismissed by the Bankruptcy Court, and yet another Chapter 11 was filed on behalf of the same debtor on March 7, 1983. The only asset of the corporation appears to be local real estate subject to a foreclosure proceeding commenced by a secured creditor. Again, the admitted object of seeking relief under Chapter 11 of the Code was to enable the debtor to secure refinancing of the subject real estate. This becomes particularly clear when a review is made of the second Chapter 11 petition which was filed in the same case on March 7, 1983.[12] It is clear from the facts of record that the debtors in each of the cases mentioned never intended to utilize the rehabilitative provisions of the Bankruptcy Code but were concerned only with the securing of the protection of the automatic stay in order that foreclosure could be avoided. This constitutes, in this Court's opinion, an abuse of the Bankruptcy Court process.

Based on the quality and degree of representation provided by debtor's counsel in each of the above-captioned cases, and based upon an individual review of the services rendered in each of those cases, and for the further reasons that in connection with many of the Chapter 13 cases, as noted *supra,* such cases were filed in clear violation of Bankruptcy Rule 911(a), this Court will direct that:

(1) All fees assessed in each of the cases be cancelled and expunged, and that as to all fees actually received, that such fees be repaid to the debtors of record within 30 days of the date of this Order;

(2) That proof of compliance with the aforesaid Court directive be made to the Court;

(3) That the attorney bear the cost of this proceeding in the amount of TWO HUNDRED FORTY–FIVE DOLLARS ($245.00); and pay the same to the Clerk of this Court within ten (10) days of the date of this Order;

(4) That this matter shall be referred by the Bankruptcy Court to the Committee on Grievances for the United States District Court for the District of Columbia, Robert C. Huey, Secretary, Room 1822A, United States Courthouse, 3d and Constitution Avenue, N.W., Washington, D.C. 20001.

of arrears due to a secured creditor: The Plan may
> "(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;"

The cases, filed primarily or solely for the purposes of securing improper delay are as follows:

| | |
|---|---|
| Michael Crestwell | No. 82–00470 |
| Oscar S. Mayers, Sr. | No. 82–00477 |
| Delores B. Stevens | No. 82–00537 |
| Vanessa R. Clark | No. 82–00578 |
| Van-Eff Investments, Inc. | No. 82–00636 |
| Malcolm J. Taylor | No. 82–00637 |
| Charles B. Papafio | No. 82–00670 |
| Virginia Turner | No. 82–00692 |
| Ethel Frances Ottey | No. 82–00703 |
| Arthur N. Thorpe | No. 83–00010 |
| Bruce Cockrell | No. 83–00023 |
| Gene A. Spruill | No. 83–00032 |
| Evelyn R. Horne | No. 83–00033 |
| Frank L. Peterson | No. 83–00034 |

12. *Van-Eff Investments, Inc.,* Case No. 83–00151. This Court has also issued a Show Cause Order in connection with this case, which matter will be heard at a later date.